ARENTFOX SCHIFF LLP
Karen E. Carr (DC Bar 975480)*
Kathleen R. Heilman (DC Bar 1007980)*
Rebecca Foreman (DC Bar 1044967)*
Matille G. Bowden (DC Bar 1754030)*
1717 K Street, NW
Washington, D.C. 20006-5344
Telephone:    202.715.8531
Facsimile:    202.857.6395
Karen.Carr@afslaw.com
Katie.Heilman@afslaw.com
Rebecca.Foreman@afslaw.com
Mattie.Bowden@afslaw.com

*Application for admission pro hac vice forthcoming

Attorneys for Proposed Intervenor-Defendants
(Additional counsel listed on signature page)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR FOOD SAFETY, and PESTICIDE ACTION NETWORK NORTH AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, and MICHAEL S. REGAN, in his official capacity as Administrator of the U.S. Environmental Protection Agency,<br><br>Defendants,<br><br>and<br><br>CROPLIFE AMERICA, AMERICAN SEED TRADE ASSOCIATION, AGRICULTURAL RETAILERS ASSOCIATION, AMERICAN SOYBEAN ASSOCIATION, NATIONAL COTTON COUNCIL OF AMERICA, NATIONAL CORN GROWERS ASSOCIATION, AND NATIONAL ASSOCIATION OF WHEAT GROWERS,<br><br>Proposed Intervenor-Defendants. | Case No. 23-cv-2714<br>**NOTICE OF MOTION AND MOTION OF CROPLIFE AMERICA, ET AL. TO INTERVENE AS DEFENDANTS, AND MEMORANDUM IN SUPPORT**<br><br>(The Honorable Susan Illston)<br><br>Date: October 13, 2023<br>Time: 10:00 AM<br>Place: Courtroom 1, 17th Floor |

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
WASHINGTON

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

1

## NOTICE OF MOTION AND MOTION TO INTERVENE

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      Notice is hereby given that on October 13, 2023 at 10:00 AM, or as soon thereafter as the

4 case may be heard, in the Courtroom of the Honorable Susan Illston (Courtroom 1 – 17th Floor),

5 CropLife America ("CropLife"), American Seed Trade Association ("ASTA"), the Agricultural

6 Retailers Association ("ARA"), the American Soybean Association ("ASA"), the National Cotton

7 Council of America ("NCC"), the National Corn Growers Association ("NCGA"), and the

8 National Association of Wheat Growers ("NAWG") (collectively "Proposed Intervenors") will

9 and hereby do respectfully move to intervene as of right as defendants in the above-entitled action

10 pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.  Alternatively, Proposed

11 Intervenors seek permissive intervention under Rule 24(b)(1)(B).  Intervention by Proposed

12 Intervenors is necessary to protect their members' vital interests in the development, distribution,

13 sale, and use of the seed treatments and treated seed that are at issue in this case and to ensure an

14 effective, efficient regulatory process for these products.

15      This Motion is based upon this Notice of Motion and Motion to Intervene, the

16 accompanying Memorandum of Points and Authorities, the Declaration of Rachel G. Lattimore

17 (CropLife), the Declaration of Andrew W. LaVigne (ASTA), the Declaration of Stephen L.

18 Censky (ASA), the Declaration of Gary M. Adams (NCC), the Declaration of Tom Haag

19 (NCGA), the Declaration of Richard Gupton (ARA), the Declaration of Chandler Goule

20 (NAWG), the Proposed Order, the conditional Proposed Answer pursuant to Rule 24(c), all

21 pleadings and papers filed in this action, and upon such other matters as the Court may entertain.

22      Counsel for Proposed Intervenors has conferred with counsel for the other parties to

23 determine whether there is opposition to this motion.  Plaintiffs' counsel had not responded to our

24 request for a position on the motion at the time of filing.  Defendants' counsel advises that the

25 United States Environmental Protection Agency and Administrator Regan (hereinafter jointly

26 referred to as "EPA") take no position on this motion.

27

28

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
WASHINGTON

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF THE ISSUES TO BE DECIDED.......................................................... 2

BACKGROUND ................................................................................................................. 3

    A.      REGULATORY FRAMEWORK UNDER FIFRA.................................... 3

    B.      SEED TREATMENTS AND TREATED SEED .................................... 4

    C.      PROPOSED INTERVENORS AND THEIR INTERESTS IN THIS
          LITIGATION ................................................................................. 5

          1.    CropLife America ............................................................... 5

          2.    American Seed Trade Association ............................................ 6

          3.    Growers ........................................................................... 7

          4.    Agricultural Retailers Association ........................................... 8

ARGUMENT ...................................................................................................................... 9

    I.    INTERVENTION AS OF RIGHT SHOULD BE GRANTED. ....................... 9

          a)    Proposed Intervenors' Motion is Timely. ................................. 10

          b)    Proposed Intervenors Have Legally Protectable Interests
                That May Be Impaired by Disposition of This Case.................... 11

          c)    Proposed Intervenors' Interests Will Not be Adequately
                Represented by Existing Parties................................................ 17

    II.  AT A MINIMUM, PERMISSIVE INTERVENTION SHOULD BE GRANTED. ......... 19

CONCULSION ................................................................................................................ 21

ArentFox Schiff LLP
Attorneys At Law
Washington

-i-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Anderson v. McCarthy*,
No. C 16-00068 (N.D. Cal. May 13, 2016), ECF No. 62 ................................. *passim*

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) .............................................................. 17

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) .......................................................... 10, 17

*Conservation L. Found. of New England, Inc. v. Mosbacher*,
966 F.2d 39 (1st Cir. 1992) .................................................................. 15

*Ctr. for Biological Diversity v. EPA*,
No. 11-cv-00293, 2013 WL 1729573 (N.D. Cal. Apr. 22, 2013) ..................... 12

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife*,
No. C 11-05108, 2012 WL 13049186 (N.D. Cal. Mar. 22, 2012) ....................... 12

*Donnelly v. Glickman*,
159 F.3d 405 (9th Cir. 1998) ................................................................ 11

*Ecological Rights Found. v. Pac. Lumber Co.*,
230 F.3d 1141 (9th Cir. 2000) .............................................................. 11

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995), *overruled in part on other grounds by*
*Wilderness Soc'y*, 630 F.3d 1173 ......................................... 10, 11, 17, 18, 19

*Freedom from Religion Found., Inc. v. Geithner*,
644 F.3d 836 (9th Cir. 2011) ................................................................ 20

*Hunt v. Wash. State Apple Adver. Comm'n*,
432 U.S. 333 (1977), *superseded by statute on other grounds Haynie v. Harris*,
No. C 10-01255, 2014 WL 899199 (N.D. Cal. Mar. 4, 2014) ........................... 11

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) ........................................................... 10, 15

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir. 1998) ................................................................. 19

*Kootenai Tribe of Idaho v. Veneman*,
313 F.3d 1094 (9th Cir. 2002), *abrogated on other grounds by Wilderness*
*Soc'y*, 630 F.3d 1173 (9th Cir. 2011) ................................................ 19, 20

ArentFox Schiff LLP
Attorneys At Law
Washington

-i-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

*League of United Latin Am. Citizens v. Wilson,*
131 F.3d 1297 (9th Cir. 1997).................................................................................. 10

*Merrell v. Thomas,*
807 F.2d 776 (9th Cir. 1986)...................................................................................... 3

*Nat. Res. Def. Council v. EPA,*
99 F.R.D. 607 (D.D.C. 1983)............................................................................ 12, 18

*People for the Ethical Treatment of Animals v. Babbitt,*
151 F.R.D. 6 (D.D.C. 1993)........................................................................ 12, 13, 15

*In re Pesticide Action Network of N. Am. v. EPA,*
No. 08-cv-01814 (N.D. Cal. July 8, 2008), ECF No. 43.......................................... 3, 4

*S. Cal. Edison Co. v. Lynch,*
307 F.3d 794 (9th Cir. 2002).................................................................................. 19

*Sagebrush Rebellion, Inc. v. Watt,*
713 F.2d 525 (9th Cir. 1983).................................................................................. 15

*Sierra Club v. Glickman,*
82 F.3d 106 (5th Cir. 1996).................................................................................... 15

*Sw. Ctr. for Biological Diversity v. Berg,*
268 F.3d 810 (9th Cir. 2001)...........................................................................*passim*

*Trbovich v. UMWA,*
404 U.S. 528 (1972)................................................................................................ 17

*United Farm Workers of Am. v. EPA,*
592 F.3d 1080 (9th Cir. 2010)................................................................................ 19

*United States v. Alisal Water Corp.,*
370 F.3d 915 (9th Cir. 2004).................................................................................. 10

*United States v. City of Los Angeles,*
288 F.3d 391 (9th Cir. 2002).................................................................................. 10

*Utah Ass'n of Counties v. Clinton,*
255 F.3d 1246 (10th Cir. 2001).............................................................................. 19

*Wash. State Bldg. & Constr. Trades Council v. Spellman,*
684 F.2d 627 (9th Cir. 1982).................................................................................. 15

*Wilderness Soc'y v. U.S. Forest Serv.,*
630 F.3d 1173 (9th Cir. 2011) (*en banc*) ............................................................. 9, 11

ArentFox Schiff LLP
Attorneys At Law
Washington

-ii-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

5 U.S.C. § 551(8) ................................................................................................................ 11

7 U.S.C. § 136(bb) ............................................................................................................ 3, 4

7 U.S.C. § 136a ..................................................................................................................... 3

7 U.S.C. § 136a(c)(5)(C) ...................................................................................................... 5

7 U.S.C. § 136a(c)(5)(C), (D) ...................................................................................... 3, 4, 5

**Other Authorities**

40 C.F.R. § 152.25 ............................................................................................................... 1

40 C.F.R. §§ 152.100–152.119 ........................................................................................... 3

Fed. R. Civ. P. 24 ................................................................................................................. 2

Fed. R. Civ. P. 24(b) .................................................................................................... 19, 21

Fed. R. Civ. P. 24(b)(1)(B) ...................................................................................... 1, 9, 19

ArentFox Schiff LLP
Attorneys At Law
Washington

-iii-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This case challenges the U.S. Environmental Protection Agency's ("EPA") longstanding, comprehensive, scientifically rigorous regulatory scheme for seed treatments and treated seed under the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136, *et seq.* ("FIFRA"). Plaintiffs allege that, notwithstanding EPA's already comprehensive safety review of pesticide products specifically for their use in treating seeds ("seed treatments"), the resulting seeds treated with those pesticides ("treated seed") should themselves be subject to redundant review and registration as pesticides under FIFRA.  Specifically, Plaintiffs dispute EPA's application of FIFRA's "treated article" exemption, 40 C.F.R. § 152.25, to treated seed, and challenge EPA's existing regulatory process as *ultra vires* and contrary to FIFRA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*  Plaintiffs further allege that the seed treatments, which protect the seeds from harmful insect pests, diseases, and other pathogens, have caused environmental and other harm.  To remedy these alleged harms, Plaintiffs seek to upend EPA's process for regulating seed treatments, and mandate that EPA separately regulate the seeds themselves as pesticides under FIFRA.

Plaintiffs' claims directly threaten and would cause significant harm to the protectable property and economic interests of Proposed Intervenors' members, who develop, distribute, sell, and use the treated seed and seed treatments challenged in Plaintiffs' Complaint.  For example, Plaintiffs' requested relief would undermine dozens of CropLife America's ("CropLife") members' existing seed treatment registrations and could stall new seed treatment registrations that may be in the pipeline, stymieing CropLife's members' ongoing development work. Plaintiffs' requested relief would also prohibit members of the American Seed Trade Association ("ASTA") and the Agricultural Retailers Association ("ARA") from applying seed treatments, or selling or distributing the treated seed, and prohibit ARA from selling seed treatments to growers who wish to apply the treatments to their seed themselves.  Growers, represented by the American Soybean Association ("ASA"), the National Cotton Council of America ("NCC"), the National Corn Growers Association ("NCGA"), and the National Association of Wheat Growers

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
WASHINGTON

-1-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

("NAWG") (collectively, the "Growers"), could no longer purchase or plant any treated seed until the seeds themselves were registered as pesticides by EPA. Growers would be deprived of the benefit of treated seed should EPA's lengthy pesticide registration process extend beyond the growing season for which a treated seed was produced.

In addition to these significant economic hardships, the relief Plaintiffs seek would also impose new, unnecessary regulatory burdens on those members who produce, sell, and grow crops from seed. Plaintiffs' claims threaten to introduce new regulatory uncertainty and suppress ongoing pesticide product advances, harming not only Proposed Intervenors' members, but also downstream consumers who depend on an abundant and affordable supply of food, feed, and fiber. Plaintiffs' requested relief would also subject Proposed Intervenors' members to needlessly burdensome and duplicative regulation. Proposed Intervenors have a strong interest in defending against a senseless expansion of an already lengthy registration process. As demonstrated below, Proposed Intervenors amply satisfy each element of this Circuit's test for intervention as of right, and equally meet the standard for permissive intervention.

## STATEMENT OF THE ISSUE TO BE DECIDED

Whether Proposed Intervenors may intervene as Defendants under Rule 24 to protect their members' property and economic interests in the seed treatment registrations and treated seed at issue in this case.

ArentFox Schiff LLP
Attorneys At Law
Washington

-2-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

1

**BACKGROUND**

2

**A.    REGULATORY FRAMEWORK UNDER FIFRA**

3    FIFRA regulates the distribution, sale, and use of pesticides, which are among the most

4  heavily regulated substances in the United States.  7 U.S.C. § 136, *et seq*.  Under FIFRA, all

5  pesticide products must be registered by EPA before they can be marketed, sold, or distributed in

6  the United States.  *Id.* §§ 136a(c)(5), 136j(a)(1).  A pesticide registration operates as a product-

7  specific license.  Mem. & Order at 5, *In re Pesticide Action Network of N. Am. v. EPA,* No. 08-cv-

8  01814 (N.D. Cal. July 8, 2008), ECF No. 43 (FIFRA registrations "are essentially government

9  licenses to produce, distribute and sell pesticides," and they "constitute property").  This "license"

10  specifies precisely where, when, and how a pesticide may be used.

11    To obtain a pesticide registration, an applicant must submit extensive scientific data to

12  EPA to demonstrate that a particular use of the product meets FIFRA's statutory standard for

13  registration: that is, use in accordance with the particular "where, when, and how" described on

14  the label will not pose an "unreasonable risk to man or the environment."  7 U.S.C. § 136(bb).

15  EPA can only register a pesticide if it determines that the pesticide "will perform its intended

16  function without unreasonable adverse effects on the environment" and that "when used in

17  accordance with widespread and commonly recognized practice it will not generally cause

18  unreasonable adverse effects on the environment."  *Id.* § 136a(c)(5)(C), (D); *see also id.* §

19  136(bb) (defining "unreasonable adverse effects").  "The FIFRA standard distinctly balances the

20  environmental harm of using a pesticide against its economic, social, and environmental

21  benefits."  *Merrell v. Thomas*, 807 F.2d 776, 780 (9th Cir. 1986).

22    In conducting its risk-based determination of whether registration of a pesticide product

23  meets the FIFRA standard, EPA reviews extensive data pertaining to the pesticide's active

24  ingredient as well as formulations and particular uses of the pesticide, including use as a seed

25  treatment.  7 U.S.C. § 136a; 40 C.F.R. §§ 152.100–152.119.  EPA's expert scientists also conduct

26  a variety of risk assessments that identify and analyze potential risks that could be associated with

27  various uses, including risks to beneficial or "non-target" organisms, like birds and honey bees.

28  Only upon determining that a pesticide use will not have an unreasonable adverse effect on the

ArentFox Schiff LLP
Attorneys At Law
Washington

-3-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

1   environment will EPA allow the use.  7 U.S.C. § 136a(c)(5)(C), (D); *see also id.* § 136(bb)

2   (defining "unreasonable adverse effects").  Every registered product is required to display an

3   EPA-approved label that enumerates approved uses, applications, and directions for use, all of

4   which are supported by data and other information submitted to EPA by the registrant and

5   evaluated by EPA as part of its risk assessment process under FIFRA.  It is unlawful to use "any

6   registered pesticide in a manner inconsistent with its labeling."  7 U.S.C. § 136j(a)(2)(G).

7          Numerous courts have recognized that FIFRA registrations are legally protectable

8   property rights.  *See* Order re Mot. to Dismiss & Mot. to Intervene at 7, *Anderson v. McCarthy*,

9   No. C 16-00068 (N.D. Cal. May 13, 2016), ECF No. 62 ("*Anderson*") (trade associations who are

10  Proposed Intervenors here permitted to intervene because their members develop, distribute, sell,

11  and use the challenged treated seed and seed treatments and, if plaintiffs obtain requested relief,

12  "seeds treated with these registered products will likely be removed from the market"); *see also*

13  Mem. & Order at 4–5, *In re Pesticide Action Network of N. Am. v. EPA,* No. 08-cv-01814 (N.D.

14  Cal. July 8, 2008), ECF No. 43 (FIFRA registrations "are essentially government licenses to

15  produce, distribute and sell pesticides," and they "constitute property").

16  **B.     SEED TREATMENTS AND TREATED SEED**

17         EPA has registered pesticides developed to protect crops or other plants that can be

18  applied in a number of ways.  In agriculture, for example, pesticides are registered for application

19  to the soil before seeds are planted ("pre-plant" application), for application to the soil at the time

20  of planting ("in-furrow" application), or to the leaves of growing plants ("foliar" use).  At issue

21  here are "seed treatments," which refer to the direct application of a pesticide to the surface of a

22  *seed* prior to planting.  Seed treatments provide a precise mode of applying pesticides, providing

23  protection to the seed during its most vulnerable developmental stages and before emergence

24  from the soil, resulting in numerous economic and environmental benefits.  This method of

25  protection may suppress, control, or repel pathogens, insects, or other pests that threaten to limit

26  seed viability and health from the time the seed enters the soil through its development as a crop

27  or other plant.  Seed treatment insecticides and fungicides were introduced decades ago to address

28  seed-borne pathogens inside or accompanying the seed; soil-borne pathogens that survive in soil

ArentFox Schiff LLP
Attorneys At Law
Washington

-4-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

1  or crop residue; and insects that feed on seeds and seedlings.  The three specific products

2  identified in Plaintiffs' Complaint—imidacloprid, clothianidin, and thiamethoxam—were

3  developed by Proposed Intervenors' members.  EPA authorized the first seed treatment use for

4  these pesticides in 2004.

5        Growers have rapidly adopted the particular seed treatments challenged by Plaintiffs

6  because they permit earlier and faster planting and precise and low-dose applications of

7  pesticides, provide an alternative to traditional over-the-top sprays, and are economical.  These

8  seed treatments have proven remarkably successful in eradicating pests; minimizing potential off-

9  target exposure to non-target organisms; improving plant populations and crop yields by ensuring

10  pesticides are present in the earliest, vulnerable stages of plant development; and reducing the

11  amounts of pesticides used when compared to traditional broadcast sprays.

12        Each of the pesticides implicated in Plaintiffs' Complaint has been registered for use as a

13  seed treatment, meaning that it has been found by EPA, after a rigorous evaluation process

14  dictated by FIFRA, to perform its intended function *as a seed treatment* without unreasonable

15  adverse effects on the environment.  7 U.S.C. § 136a(c)(5)(C).  These seed treatments and

16  resulting treated seed play a fundamental role in ensuring a safe and affordable food supply for all

17  Americans, are essential to controlling agricultural pests, and support exports of food, feed, and

18  fiber.

19  **C.**   **PROPOSED INTERVENORS AND THEIR INTERESTS IN THIS LITIGATION**

20         **1.**   **CropLife America**

21        CropLife America ("CropLife") is a national, private, not-for-profit trade association

22  representing companies that develop and sell pesticide products for agriculture and pest

23  management in the United States.  Ex. A, Declaration of Rachel G. Lattimore ("Lattimore Decl.")

24  ¶ 2.  Its registrant member companies produce the vast majority of pesticide products registered

25  under FIFRA for use in the United States, including those registered for use on seeds.  *Id.*

26  CropLife's member companies developed and registered with EPA each of the "neonicotinoid"

27  pesticides identified in Plaintiffs' Complaint, including for use as a seed treatment.  To obtain and

28  maintain those registrations, CropLife's members have made substantial investment in the

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
WASHINGTON

-5-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

product research, development, and testing for efficacy, health, and safety to support their

registrations and have participated extensively in EPA's registration processes under FIFRA. *Id.*

¶ 5.  Moreover, CropLife moved for and was granted intervention as of right in *Anderson*, the

earlier case in which Plaintiffs unsuccessfully challenged EPA's approach to regulating treated

seeds on grounds like those advanced here. *See Anderson*.  Following the *Anderson* case,

CropLife prepared and submitted extensive comments during the comment period EPA initiated

in connection with Plaintiffs' petition, urging EPA to deny the petition that forms the basis for

Plaintiffs' current suit.  Lattimore Decl. ¶ 9.  To further protect its members' plain and direct

interests in this litigation, CropLife seeks to intervene.

### 2.    American Seed Trade Association

American Seed Trade Association ("ASTA") is a voluntary, not-for-profit trade

association representing companies that research, develop, produce, and distribute seeds for use in

agriculture in the United States and abroad.  Ex. B, Declaration of Andrew W. LaVigne

("LaVigne Decl.") ¶ 2.  Of the $16-17 billion in annual seed sales by ASTA's members, more

than 75% cover seeds that are treated with pesticides. *Id.* ¶ 3.  These seed treatments are often

applied to seeds by ASTA's members, in accordance with the seed treatments' FIFRA labels. *Id.*

ASTA's members invest substantial funds in product research, development, and testing for

efficacy, health, and safety before treated seed and seed treatments are brought to market. *Id.* ¶ 5.

And in reliance on the seed treatment registrations issued by EPA and the continued marketability

of their treated seed products, ASTA's members have also invested millions of dollars in research

and development of seed treatment equipment and improvements to the seed treatment

application process and made additional capital investments in employee and customer training,

marketing materials, and packaging. *Id.*  Like CropLife, ASTA moved for and was granted

intervention as of right in the *Anderson* litigation described above, and ASTA similarly prepared

and submitted comments on Plaintiffs' petition, urging EPA to deny the petition that forms the

basis for Plaintiffs' current suit.  LaVigne Decl. ¶ 8.  ASTA's members would suffer significant

financial harm and be subject to increased regulatory burdens should Plaintiffs prevail in this

ArentFox Schiff LLP
Attorneys At Law
Washington

-6-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

case. *Id.* ¶¶ 6-7.  As was true in *Anderson*, ASTA's members have a unique and direct interest in this case, and ASTA seeks to intervene to protect its members' interests. *Id.* ¶ 3.

### 3. Growers

**American Soybean Association.**  The American Soybean Association is a national, private, not-for-profit trade association representing U.S soybean growers on domestic and international issues of importance to the soybean industry.  *See* Ex. C, Declaration of Stephen L. Censky ("Censky Decl.") ¶ 2.  ASA has 26 affiliated state soybean associations representing 30 soybean-producing states and the interests of more than 500,000 American soybean farms.  *Id.* ASA's members represent a large percentage of the 82.7 million acres of soybeans planted annually in the United States, with a total crop value estimated at $59 billion.  *Id.*  ASA's members are soybean growers, and seed treatments have become an integral part of their farming operations.  *Id.* ¶ 3.  ASA similarly sought and was granted intervention in *Anderson* to protect their interests, and ASA's members would equally suffer substantial financial losses and increased regulatory burdens should Plaintiffs succeed here, and thus have a unique and direct interest in this case.  *Id.* ¶¶ 7-9.

**National Cotton Council of America.**  The National Cotton Council of America is a national, private, not-for-profit central organization representing companies and individual growers, ginners, warehousemen, cottonseed crushers and merchandizers, cooperatives, merchants, and textile manufacturers in 17 states that produce and process cotton grown and sold in the United States.  *See* Ex. D, Declaration of Gary M. Adams ("Adams Decl.") ¶ 2.  NCC represents the interests of producers who cultivate more than 10 million acres of cotton annually, a substantial portion of the annual cotton production estimated at more than $5 billion.  *Id.* NCC's members are cotton producers who use and rely on treated seed, and as NCC established in seeking successfully to intervene in *Anderson*, would suffer financial harm and additional regulatory burden should Plaintiffs obtain the relief they seek in their Complaint.  *Id.* ¶¶ 3-10.  NCC has a unique and direct interest in this case and seeks to intervene on that basis. *Id.* ¶ 11.

**National Corn Growers Association.**  The National Corn Growers Association is a national, private, not-for-profit association representing farmers that produce corn grown and sold

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
WASHINGTON

-7-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

in the United States.  *See* Ex. E, Declaration of Tom Haag ("Haag Decl.") ¶ 2.  NCGA represents nearly 40,000 dues-paying corn growers and the interests of more than 300,000 farmers, who grow a majority of the corn sold in the United States.  *Id.*  NCGA's members have rapidly adopted the use of treated seed, and estimate that more than 95 percent of corn seed planted in the United States is treated with a neonicotinoid pesticide.  *Id.* ¶ 3.  As NCGA established when it intervened successfully in *Anderson*, NCGA's members have valuable interests in the continued use of this treated seed and in EPA's existing regulatory process for seed treatments.  *Id.* ¶ 7.  A finding adverse to EPA in this case would equally adversely impact these farmers' operations, profitability, and ability to economically produce corn.  *Id.* ¶¶ 5-7.  NGCA seeks to intervene in this case on that basis.

**National Association of Wheat Growers.**  The National Association of Wheat Growers is a national, private, not-for-profit federation of 20 state grain growers associations representing the interests of companies and individual farmers that produce wheat grown and sold in the United States, including 300,000 wheat producers who grow a majority of the over 35 million acres of wheat farmed in the United States annually.  *See* Ex. F, Declaration of Chandler Goule ("Goule Decl.") ¶ 2.  The annual value of wheat crops is estimated to be in excess of $12 billion. *Id.*  As NAWG established when it intervened successfully in *Anderson,* NAWG's grower-members rely on treated seed to protect their wheat crops and would suffer financially and be subject to an increased regulatory burden should Plaintiffs succeed in their lawsuit.  *Id.* ¶¶ 3-7. NAWG has a unique and direct interest in this case and seeks to intervene on that basis.  *Id.* ¶ 8.

### 4.    Agricultural Retailers Association

ARA is a national, not-for-profit trade association representing agricultural retailers, distributors, and manufacturers who supply farmers and ranchers with products and services.  *See* Ex. G, Declaration of Richard Gupton ("Gupton Decl.") ¶ 2.  ARA's members sell seed, nutrients, pesticide products, feed, equipment, and technology, including crop input materials, *i.e.*, seeds, pesticides, and fertilizer, used to nourish and protect a wide variety of crops.  *Id.* ARA's members also provide consultative services such as crop scouting, soil testing, field mapping, development of nutrient management and conservation plans, and custom in-field

ArentFox Schiff LLP
Attorneys At Law
Washington

-8-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

application of nutrients and pesticides. *Id.* ¶ 3. ARA's 247 members, operating in all 50 states, are responsible for the sale of over 70 percent of all crop input materials sold to farmers in the United States. *Id.* ¶ 4. Importantly, ARA's members also apply FIFRA-registered seed treatments to seeds using their own equipment at ARA member retail establishments and sell both pesticides for seed treatment use and treated seed, and therefore have a unique and direct interest in this case. *Id.* ¶¶ 3, 5. ARA sought and obtained intervention alongside CropLife, ASTA, and the Growers in *Anderson*, and seeks to advance the same significant and protectable interests here that the Court recognized in that case.

## **ARGUMENT**

For the reasons discussed below, Proposed Intervenors are entitled to intervene in this case as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2). In the alternative, Proposed Intervenors should be permitted to intervene under Federal Rule of Civil Procedure 24(b)(1)(B).

## I. INTERVENTION AS OF RIGHT SHOULD BE GRANTED.

An applicant is entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) if it satisfies four conditions:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (*en banc*) (citation omitted); *see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). The Ninth Circuit applies:

> [a] liberal policy in favor of intervention [which] serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.

ArentFox Schiff LLP
Attorneys At Law
Washington

-9-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

1  *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002) (quoting *Forest*

2  *Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995), *overruled in*

3  *part on other grounds by Wilderness Soc'y*, 630 F.3d 1173) (internal quotation marks omitted).

4  The intervention inquiry is "guided primarily by practical considerations, not technical

5  distinctions." *Berg*, 268 F.3d at 818 (internal quotation marks and citation omitted). "[A] district

6  court is required to accept as true the non-conclusory allegations made in support of an

7  intervention motion." *Id.* at 819.

8        Proposed Intervenors satisfy all requirements for intervention as of right.

9        **a)      Proposed Intervenors' Motion is Timely.**

10        "Timeliness is 'the threshold requirement' for intervention as of right." *League of United*

11  *Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (quoting *United States v.*

12  *Oregon*, 913 F.2d 576, 588 (9th Cir. 1990)). In assessing the timeliness of a motion to intervene,

13  courts consider three factors: (1) the stage of the proceeding; (2) prejudice to existing parties; and

14  (3) reasons for any delay. *Id.* A court's determination of timeliness, however, is a "flexible

15  concept; its determination is left to the district court's discretion." *United States v. Alisal Water*

16  *Corp.*, 370 F.3d 915, 921 (9th Cir. 2004).

17        There can be no dispute that Proposed Intervenors' motion is timely. Plaintiffs'

18  Complaint was filed on May 31, 2023, and Proposed Intervenors filed their motion without delay.

19  No hearings have been held, the Government's response was filed a mere week ago, and the case

20  management conference will not occur until October 6, 2023. This case remains in the earliest

21  stages, and no party will suffer prejudice related to Proposed Intervenors' motion. *See, e.g.*,

22  *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (holding

23  that a motion to intervene was timely when it was filed less than three months after filing of the

24  complaint and less than two weeks after the defendant filed its answer); *Idaho Farm Bureau*

25  *Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding that motion was timely when filed

26  "four months after [plaintiff] filed the action" and "before any hearings or rulings on substantive

27  matters"). Proposed Intervenors' Motion is timely.

28

ArentFox Schiff LLP
Attorneys At Law
Washington

-10-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

**b)      Proposed Intervenors Have Legally Protectable Interests That May Be Impaired by Disposition of This Case.**

An interest is "significantly protectable" if it is "protectable under some law" and "there is a relationship between the legally protected interest and the [plaintiffs'] claims." *Berg*, 268 F.3d at 818 (citations omitted).  An interest is related to a claim where resolution of the claim actually affects the movant's interest.  *See Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998).  Furthermore, the Ninth Circuit has set forth "a practical, threshold inquiry" whereby "[n]o specific legal or equitable interest need be established." *Forest Conservation Council*, 66 F.3d at 1493 (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)), *overruled in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173.  Proposed Intervenors and their members have significant protectable interests in this case.[1]

CropLife's members produce, distribute, and sell a majority of the pesticides used in the United States, including those used as seed treatments to protect crops as seeds and as growing plants.  Lattimore Decl. ¶ 2.  These members hold the pesticide registrations authorizing the seed treatment at issue in this case.  *Id.* ¶ 7.  Under the APA, FIFRA registrations are considered licenses that are protected by law.  5 U.S.C. § 551(8) ("license" includes "the whole or a part of an agency permit, certificate, approval, registration . . . or other form of permission").  As a consequence, courts have recognized FIFRA registration licenses as significantly protectable

---

[1] In the Ninth Circuit, a would-be intervenor's standing "is at least implicitly addressed by [the Ninth Circuit's] requirement that the applicant must assert[ ] an interest relating to the property or transaction which is the subject of the action." *Berg*, 268 F.3d at 821 n.3 (internal quotation marks and citation omitted).  Although a separate assertion is not necessary, Proposed Intervenors nonetheless satisfy each of the factors required to show associational standing:  (1) Proposed Intervenors' members have sufficient interest in the continued validity of EPA's process for regulating seed treatments, seed treatment registrations, and the use of treated seed, (2) the interests Proposed Intervenors seek to protect are germane to the Proposed Intervenors' purposes, and (3) neither Plaintiffs' claims nor relief requires the participation of Proposed Intervenors' individual members.  *Id.; see also Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977), *superseded by statute on other grounds Haynie v. Harris*, No. C 10-01255, 2014 WL 899199 (N.D. Cal. Mar. 4, 2014); *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000).

ArentFox Schiff LLP
Attorneys At Law
Washington

-11-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

property interests for purposes of determining a third party's right to intervene in an action. *Anderson* at 7 (finding that CropLife had "demonstrated a protectable interest" in Plaintiffs' earlier challenge to EPA's approach with respect to treated seeds); *see also Nat. Res. Def. Council v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983) (finding that pesticide industry representatives "can be said to have a substantial and direct interest in the subject" of the litigation challenging the procedures by which EPA determined that their pesticide products "merited continued registration"); *see also Ctr. for Biological Diversity v. U.S. Fish & Wildlife,* No. C 11-05108, 2012 WL 13049186, at *1 (N.D. Cal. Mar. 22, 2012) (granting motion to intervene as of right because CropLife has "property interests in [FIFRA] registrations," and those interests are "further supported by CropLife's members' investment in the generation and submission of data, studies and analyses to support their registrations and their extensive involvement in the EPA's registration process"); *Ctr. for Biological Diversity v. EPA,* No. 11-cv-00293, 2013 WL 1729573, at *6-7 (N.D. Cal. Apr. 22, 2013) ("The applicants are owners of the pesticide registrations, and thus have property and financial interests in the registrations.").

Moreover, the seed treatment registrations at issue are the product of enormous investments of time and resources by CropLife's members, who have collectively invested hundreds of millions of dollars to obtain and maintain the registrations that permit the sale and use of the pesticides at issue here, and who rely on revenue from the sale and distribution of such products.  Lattimore Decl. ¶ 6.  Success for Plaintiffs in this case would render null and void dozens of CropLife's members' seed treatment registrations and remove from the market popular and widely used seed treatments until such time as the seeds themselves may be registered, foreclosing seed treatment on millions of acres of planted seeds throughout the United States, and subjecting CropLife's members to millions of dollars of financial loss and significant uncertainty. *Id.* ¶ 8.  This alone is a sufficient interest, directly related to the subject of this action, to support intervention as of right.  *See, e.g.*, *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6, 8 (D.D.C. 1993) ("[Intervenor-Defendant] has . . . demonstrated that denial of his Motion to Intervene would impair this cognizable interest in protecting his business.  Because

ArentFox Schiff LLP
Attorneys At Law
Washington

-12-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

1  Plaintiffs seek the invalidation and revocation of [Intervenor-Defendant's] . . . permit . . .

2  disposing of this lawsuit would directly impair [his] interest.").

3      A significant portion of ASTA's members' business is comprised of producing and selling

4  the treated seed at issue.  LaVigne Decl. ¶¶ 2-3.  These members would suffer significant

5  financial harm if sales of treated seed and seed treatments were halted while treated seed are

6  subjected to lengthy and unnecessarily duplicative EPA reviews.  *Id.* ¶ 6.  And for the many seeds

7  that are treated with a particular seed treatment based on pest pressures in specific geographies or

8  driven by upcoming weather patterns, EPA's registration process for this treated seed may extend

9  well past the particular growing season and pest pressures for which a treated seed was produced.

10 *Id.*  ASTA's members, in conjunction with other participants in the value chain, invest substantial

11 funds in product research, development, and testing for efficacy, health, and safety before treated

12 seed and seed treatments are brought to market.  *Id.* ¶ 5.  And in reliance on the seed treatment

13 registrations issued by EPA and the continued marketability of their treated seed products,

14 ASTA's members have also invested millions of dollars in research and development of seed

15 treatment equipment and improvements to the seed treatment application process, and made

16 additional capital investments in employee and customer training, marketing materials and

17 packaging.  *Id.*  Thus, any action affecting the status of these seed treatment registrations, or the

18 availability of treated seed, would significantly and adversely impact ASTA's members.  *Id.*

19      In addition, if Plaintiffs were to prevail, ASTA's members would be subject to increased

20 regulatory burdens.  *Id.* ¶ 7.  For example, if treated seed were to be regulated as pesticides,

21 ASTA members in the business of applying seed treatments may be required to register their seed

22 production facilities as pesticide manufacturing facilities with EPA under FIFRA.  *Id.*  ASTA

23 seeks to intervene in this matter to represent and defend its members' valuable interests in their

24 continued ability to develop, produce, and sell treated seed.  *Id.* ¶ 9.  These significant effects on

25 ASTA's members' businesses are sufficient interests directly related to the subject of this action

26 to support intervention as of right.  *See Anderson* at 8 (granting ASTA's intervention because

27 ASTA's "members will face economic harm if plaintiffs obtain the relief they seek and the

28 organizations will also confront enhanced regulatory burdens"); *Babbitt*, 151 F.R.D. at 8.

ArentFox Schiff LLP
Attorneys At Law
Washington

-13-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

The Growers' members also have protectable interests in their continued use of and reliance on the treated seed at issue, which are vital to the economic wellbeing of these members' farming operations.  Censky Decl. ¶¶ 4-5; Adams Decl. ¶¶ 3, 5; Haag Decl. ¶ 3; Goule Decl. ¶ 3. These seed treatment registrations are necessary, and sometimes exclusive, tools for growers to protect seeds from early-season insects, pests, and diseases.  Censky Decl. ¶ 4; Adams Decl. ¶¶ 3-4; Haag Decl. ¶ 4; Goule Decl. ¶ 4.  The protection conveyed by seed treatments results in healthier plants and increased crop yields, among other benefits, and reduces the need for higher volumes of other pesticides, additional trips across the field to apply pesticides, rescue treatments (post-emergent pesticide applications to address pest infestation), replanting of failed crops, and costly higher-density seeding.  Censky Decl. ¶ 4; Adams Decl. ¶ 3; Haag Decl. ¶¶ 3-4; Goule Decl. ¶ 4.  If Plaintiffs succeed in halting the use of treated seed until those seeds are registered as pesticides by EPA, a process which requires a stringent, lengthy review by the EPA, the Growers will suffer losses of many hundreds of millions of dollars.  Censky Decl. ¶¶ 6-7; Adams Decl. ¶ 7; Haag Decl. ¶¶ 4-5; Goule Decl. ¶¶ 6-7.  For example, growers would suffer substantial yield loss and reduced quality of harvested crops resulting from the use of less effective pesticides.  This will result in substantially reduced farm income while costs will increase because growers will have to pay significantly more for higher quantities of pesticides, and use more fuel and labor to apply those pesticides.  Censky Decl. ¶ 7; Adams Decl. ¶ 7; Haag Decl. ¶ 5; Goule Decl. ¶ 7. Some growers would be required to lengthen crop rotations between susceptible crops in order to minimize the buildup of harmful pathogens, resulting in reduced production of profitable crops, and ultimately, farm income.  Goule Decl. ¶ 6.  In addition, EPA's registration process for a particular treated seed may extend beyond the growing season for which the treated seed was produced, minimizing its opportunity to provide benefits.  Haag Decl. ¶ 4; *see also* Censky Decl. ¶ 6.  Growers would also face additional and costly regulatory burdens if seeds were to be registered as pesticides by EPA, as each planting may be considered a pesticide application, requiring some Growers to register as certified pesticide applicators.  Censky Decl. ¶ 8; Adams Decl. ¶ 9; Haag Decl. ¶ 6; Goule Decl. ¶ 8.  Growers may also be required to register their farms with EPA as pesticide manufacturing facilities, imposing reporting, recordkeeping, and other

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
WASHINGTON

-14-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

1   burdensome requirements that will draw time and resources away from farming operations that

2   are currently operating on slim or negative margins.  Censky Decl. ¶ 8; Adams Decl. ¶ 9; Haag

3   Decl. ¶ 6; Goule Decl. ¶ 8.  The significant effects on these members and their already-financially

4   stressed farming operations are sufficient interests directly related to the subject of this action to

5   support intervention as of right.  *See Anderson* at 7–8; *Sierra Club v. Glickman*, 82 F.3d 106, 109

6   (5th Cir. 1996) (allowing intervention by farmers' trade organization); *Conservation L. Found. of*

7   *New England, Inc. v. Mosbacher*, 966 F.2d 39, 43–44 (1st Cir. 1992); *Babbitt*, 151 F.R.D. at 8.

8        ARA's members also have a protectable interest in this matter.  Gupton Decl. ¶ 5.  If

9   Plaintiffs prevail in this case, ARA's members will be barred from selling treated seed and seed

10  treatments and applying seed treatments to seeds until the treated seed itself is registered by

11  EPA—a lengthy process under EPA's robust, science-based review, and thereby subjecting

12  ARA's members to significant financial losses of potentially millions of dollars. *Id.* ¶ 6.  An

13  adverse finding could also increase regulatory burdens for ARA's members, which would

14  undoubtedly increase costs, uncertainty, and delay in the ability of ARA's members to sell and

15  distribute products and provide services to farmers.  *Id.* ¶ 7.  Like those of CropLife, ASTA, and

16  the Growers, ARA's members' interests are sufficient to support intervention as of right.

17       Proposed Intervenors also have significant, protectable interests in the considerable efforts

18  invested by their members in "participat[ing] in the administrative process" that culminated in

19  EPA's response to the Plaintiffs' petition and, more generally, EPA's grant of these seed

20  treatment registrations.  Such involvement is sufficient to support intervention as of right.  *Idaho*

21  *Farm Bureau Fed'n*, 58 F.3d at 1397-98 (holding that such participation gave rise to legally

22  protectable interest and affirming grant of intervention as of right); *Sagebrush Rebellion, Inc. v.*

23  *Watt*, 713 F.2d 525, 527 (9th Cir. 1983) (explaining that the Ninth Circuit has not had "any

24  difficulty determining that the organization seeking to intervene had an interest in the subject of

25  the suit" in cases "challenging the legality of a measure which it had supported"); *Wash. State*

26  *Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) (holding that

27  sponsors of a ballot initiative had a significantly protectable interest in defending initiative against

28  challenge).

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
WASHINGTON

-15-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

As outlined above, Plaintiffs followed their unsuccessful *Anderson* litigation, in which the district court granted Proposed Intervenors' motion to intervene as of right, by filing a petition with EPA, asking for essentially the same relief. EPA published the petition for public comment, in response to which Proposed Intervenors filed extensive public comments countering petitioners' arguments and asking EPA to the deny the petition. More generally, Proposed Intervenors' members have participated extensively in EPA's administrative review process for pesticide registration applications, including the process for the seed treatment registrations at issue in this case, and relied on that well-established process to authorize commercialization of their products for those registered uses. Lattimore Decl. ¶ 7; LaVigne Decl. ¶ 8. They have submitted voluminous scientific data, comments, and analysis, and have spent countless hours meeting with EPA and, for some products, scientific advisory panels, to support the finding that these pesticides meet the legal safety criteria required for registration under FIFRA. Lattimore Decl. ¶ 7; LaVigne Decl. ¶ 8; Censky Decl. ¶ 9; Adams Decl. ¶ 10; Haag Decl. ¶ 7; Gupton Decl. ¶ 7; Goule Decl. ¶ 8. These efforts would be needlessly duplicated were the seeds themselves to be registered as pesticides when the pesticides themselves are already subject to EPA's stringent, science-based review under FIFRA. Lattimore Decl. ¶ 7; LaVigne Decl. ¶ 6; Censky Decl. ¶ 6; Adams Decl. ¶ 7; Haag Decl. ¶ 6; Gupton Decl. ¶ 7; Goule Decl. ¶ 8.

Further, an order modifying the seed treatment registrations or the process to obtain and maintain those registrations could disrupt the business relationships of Proposed Intervenors' members with distributors and customers. Lattimore Decl. ¶ 8; LaVigne Decl. ¶¶ 9-11; Censky Decl. ¶¶ 10-12; Adams Decl. ¶¶ 11-13; Haag Decl. ¶¶ 8-10; Gupton Decl. ¶¶ 8-10; Goule Decl. ¶¶ 9-11. If Plaintiffs prevail, this will directly impair Proposed Intervenors' members' interests in treated seed and seed treatments. Lattimore Decl. ¶ 8; LaVigne Decl. ¶¶ 9-11; Censky Decl. ¶¶ 10-12; Adams Decl. ¶¶ 11-13; Haag Decl. ¶¶ 8-10; Gupton Decl. ¶¶ 8-10; Goule Decl. ¶¶ 9-11. In sum, Proposed Intervenors' members have legally protectable interests in the subject of this case, and the disposition of this case will affect the members' ability to protect these interests.

ArentFox Schiff LLP
Attorneys At Law
Washington

-16-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

1

2

**c)    Proposed Intervenors' Interests Will Not be Adequately Represented by Existing Parties.**

3      The final condition for intervention as of right is that the representation of a proposed

4   intervenor's interests by the existing parties "may be" inadequate.  *Trbovich v. UMWA*, 404 U.S.

5   528, 538 & n.10 (1972) (citing 3B James W. Moore *et al.*, *Moore's Federal Practice* ¶ 24.09-1(4)

6   (1969)).  Supreme Court precedent clarifies that the burden of showing inadequacy is "minimal."

7   *Id.* (finding that where a private party sought intervention in support of the government, there was

8   "sufficient doubt" as to the adequacy of representation even though the desired end result for the

9   intervenor and the government was similar); *see also Berg*, 268 F.3d at 823; *Citizens for*

10  *Balanced Use*, 647 F.3d at 898; *Forest Conservation Council*, 66 F.3d at 1498 (citing *Trbovich*,

11  404 U.S. at 538 n.10) (explaining that a movant's "burden in showing inadequate representation

12  is minimal:  it is sufficient to show that representation *may* be inadequate.") (emphasis added);

13  *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) ("The burden on proposed intervenors

14  in showing inadequate representation is minimal, and would be satisfied if they could

15  demonstrate that representation of their interests 'may be' inadequate.") (quoting *Trbovich*, 404

16  U.S. at 538 n.10).  In considering the adequacy of representation, this Court must "consider

17  whether the interest of a present party is such that it will undoubtedly make all the intervenor's

18  arguments; whether the present party is capable and willing to make such arguments; and whether

19  the intervenor would offer any necessary elements to the proceedings that other parties would

20  neglect."  *Forest Conservation Council*, 66 F.3d at 1498-99.  The most important factor in

21  assessing the adequacy of existing parties' representation is "how the interest compares with the

22  interests of existing parties."  *Citizens for Balanced Use*, 647 F.3d at 898 (*citing Arakaki*, 324

23  F.3d at 1086).

24      EPA cannot adequately represent the interests of Proposed Intervenors and their members

25  in this action.  Proposed Intervenors and EPA do not have "sufficiently congruent interests" to

26  merit a finding of adequate representation.  *See Berg*, 268 F.3d at 823.  Proposed Intervenors have

27  an interest in protecting the value of their members' seed treatment registrations; preserving the

28  right to develop, distribute, and sell their seed treatment products and treated seed; and ensuring

ArentFox Schiff LLP
Attorneys At Law
Washington

-17-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

that its members can continue timely use of treated seed to produce crops for the foreign and domestic markets.

While Proposed Intervenors support EPA's defense of the regulatory scheme surrounding treated seeds and seed treatments, their economic and proprietary interests in the registrations are different from those of EPA, such that the parties "do not have sufficiently congruent interests" to merit a finding of adequate representation. *Id.* In contrast to Proposed Intervenors, EPA is charged with protecting human health and the environment by ensuring that each product authorized under FIFRA meets that statute's safety mandate. EPA does not share Proposed Intervenors' interests in protecting the commercial value of seed treatment registrations, developing and selling treated seed, and using those seeds for producing valuable crops. Indeed, courts have recognized that in the particular context of pesticide registration, the inadequacy standard is met even in cases where EPA and pesticide manufacturers appear to have interests that are directly aligned. *See, e.g.*, *Nat. Res. Def. Council*, 99 F.R.D. at 610 (concerning regulatory reform measures for pesticides). This is because EPA's broader goal in challenges to its pesticide registration decisions is "defending [the] policies and procedures that it utilizes in regulating many potentially harmful substances," while a manufacturer has "interests [that] are more narrowly focused on proceedings relating to the particular pesticide[ ] [it] manufacture[rs]" and thus wishes to maximize its opportunities to prove that its products are safe. *Id.* Furthermore, EPA has an interest in defending against an outcome that would increase burdens on *EPA* in the FIFRA registration process, but it would not share Proposed Intervenors' members' concerns about how these changes would increase burdens and economic uncertainty on pesticide registrants, their customers, and growers.

Moreover, EPA may desire to reach a settlement of this case that would put in place some or all of the relief sought by Plaintiffs, but to which Proposed Intervenors object. Courts have found that this potential for conflict is sufficient to meet the "minimal" burden of demonstrating inadequacy of representation by existing parties. *See, e.g.*, *Berg*, 268 F.3d at 823 ("City in this case cannot be expected successfully to safeguard Applicants' legally protectable interests"); *Forest Conservation Council*, 66 F.3d at 1499 (finding proposed intervenors satisfied the minimal

ArentFox Schiff LLP
Attorneys At Law
Washington

-18-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

showing required for inadequacy of representation by existing parties because, in part, "the government must present the broad public interest, not just the economic concerns of the [proposed intervenors]").  Furthermore, the government's duty to represent the interests of the public at large means its interests do not necessarily align with Proposed Intervenors and their members.  *See Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255–56 (10th Cir. 2001); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973–74 (3d Cir. 1998).  In prior instances, EPA has not demonstrated its willingness to make the same arguments as intervenors, in some cases even failing to advance ultimately successful arguments to seek dismissal of cases challenging registrations.  *See, e.g.*, *United Farm Workers of Am. v. EPA*, 592 F.3d 1080, 1082 (9th Cir. 2010) (noting that EPA did not join pesticide registrant intervenors' motion to dismiss on jurisdictional grounds, which was ultimately granted by the court).  Here, there is no indication that the government will "undoubtedly make all [of the proposed intervenors'] arguments," a fact supporting intervention.  *Forest Conservation Council*, 66 F.3d at 1498-99.  In sum, Proposed Intervenors and EPA have substantially different interests and different objectives, and there should be no presumption of adequacy here.

## II.    AT A MINIMUM, PERMISSIVE INTERVENTION SHOULD BE GRANTED.

In addition to satisfying the requirements for intervention as of right, Proposed Intervenors also meet the standard for permissive intervention.  Rule 24(b) provides that on timely application "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "The language of the rule makes clear that . . . if there is a common question of law or fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention."  *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (9th Cir. 2011).

A proposed permissive intervenor must satisfy three conditions: (1) its claims or defenses must share a common question of law or fact with the main action; (2) the motion must be timely; and (3) there must be an independent ground for jurisdiction.  *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002).  Proposed Intervenors satisfy each condition.

ArentFox Schiff LLP
Attorneys At Law
Washington

-19-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

1       The "common question of law or fact" prerequisite is satisfied because Proposed

2  Intervenors seek to address a major issue in the case—the continued validity of EPA's process for

3  regulating seed treatments, seed treatment registrations, and the use of treated seed without

4  duplicative regulatory requirements.  Proposed Intervenors seek to defend the validity of this

5  process and do not seek to file counter or cross claims.  *See* Proposed Intervenors' [Proposed]

6  Answer.

7       Proposed Intervenors' members have been deeply involved with developing, distributing,

8  selling, and using the seed treatment pesticides and treated seed at issue; helping to ensure their

9  safety to consumers, farmworkers, animals, and the environment; and securing and complying

10  with product approvals by EPA under FIFRA.  Proposed Intervenors have also participated in

11  previous litigation and filed public comments, seeking to preserve EPA's regulatory approach to

12  treated seeds.  As intervenors here, Proposed Intervenors would assist this Court by highlighting

13  the overwhelming importance of seed treatment pesticides and treated seeds to U.S. agriculture,

14  Proposed Intervenors' members' reliance on EPA's longstanding regulatory approach, and the

15  harms to agriculture that would result if Plaintiffs obtained the relief they are seeking.  Lattimore

16  Decl. ¶ 8; LaVigne Decl. ¶¶ 4-6.  Proposed Intervenors can therefore "assist the court in its

17  orderly procedures leading to the resolution of this case."  *Kootenai Tribe*, 313 F.3d at 1111.  This

18  information is not simply "common" to Plaintiffs' claims, it is "directly responsive to" the issues

19  raised by Plaintiffs' Complaint.  *Id.* at 1110.

20       As set forth above, the current motion is timely and does not prejudice Plaintiffs' interests

21  in the case.  Additionally, because this is a federal question case and Proposed Intervenors do not

22  seek to add additional state law claims, there is no jurisdictional bar to its entry.  *See Freedom*

23  *from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011) ("Where the proposed

24  intervenor in a federal-question case brings no new claims, the jurisdictional concern drops

25  away.").

26       Proposed Intervenors satisfy all three conditions for permissive intervention.

27  Accordingly, if the Court finds that Proposed Intervenors may not intervene as of right, Proposed

28  Intervenors should be granted leave to intervene permissively in all aspects of the case.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
WASHINGTON

-20-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714

## CONCLUSION

For the reasons above, Proposed Intervenors should be granted leave to intervene as of right in this action pursuant to Federal Rule of Civil Procedure 24(a)(2).  In the alternative, Proposed Intervenors respectfully request permission to intervene pursuant to Federal Rule of Civil Procedure 24(b).

Dated:         September 8, 2023              **ARENTFOX SCHIFF LLP**

By: _/s/ Lynn Fiorentino_
ARENTFOX SCHIFF LLP
Karen E. Carr (DC Bar 975480)*
Kathleen R. Heilman (DC Bar 1007980)*
Rebecca Foreman (DC Bar 1044967)*
Matille G. Bowden (DC Bar 1754030)*
1717 K Street, NW
Washington, D.C.  20006-5344
Telephone:    202.857.6000
Facsimile:    202.857.6395
Karen.Carr@afslaw.com
Katie.Heilman@afslaw.com
Rebecca.Foreman@afslaw.com
Mattie.Bowden@afslaw.com

Lynn Fiorentino (California Bar)
44 Montgomery Street, 38th Floor
San Francisco, CA 94104
Telephone:    415.757.5503
Facsimile:    415.757.5501
Lynn.Fiorentino@afslaw.com

*Application for admission pro hac vice forthcoming*

*Attorneys for Proposed Intervenor-Defendants*

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
WASHINGTON

-21-

MOTION OF CROPLIFE AMERICA, ET AL.
TO INTERVENE AS DEFENDANTS,
Case No. 23-cv-2714