Amy van Saun (*Pro Hac Vice*)
Kristina Sinclair (CA Bar No. 329416)
Center for Food Safety
303 Sacramento Street, Floor 2
San Francisco, CA 94111
Phone: (415) 826-2770
Emails: avansaun@centerforfoodsafety.org
        ksinclair@centerforfoodsafety.org

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR FOOD SAFETY, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>    *Defendants*,<br><br>and<br><br>CROPLIFE AMERICA, *et al.*,<br><br>    *Intervenor-Defendants*. | Case No. 23-cv-2714-SI<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPLETE OR SUPPLEMENT ADMINISTRATIVE RECORD** |

# TABLE OF CONTENTS

I.   "Whole Record Standard" Includes Documents Submitted to Agency ................................................................................................... 1

II.  Plaintiffs Overcame Presumption of Regularity, Burden Shifts to EPA........................................................................................................ 3

III. Record Should Be Supplemented with FOIA Documents That Show Failure to Consider Important Aspect .............................................. 5

CONCLUSION ................................................................................................... 6

This entire challenge is about EPA's denial of a 2017 citizen petition to regulate neonicotinoid-coated seeds. This motion is about a set universe of documents that were before EPA during the five years it took to answer the petition, not some broad category of documents that Plaintiffs speculate should be in EPA's possession. EPA now claims that hard copies of sources cited in that petition, hand-delivered to EPA, are not part of the record, largely because *current* EPA staff cannot find them in their files. EPA asks the Court to follow this logic by strictly construing "indirectly considered" more narrowly than any Ninth Circuit precedent. This Court should not take the bait, but instead order EPA to complete the record with the 36 attachments delivered with the Petition and cited therein. The Court should also order EPA to complete the record with the identified FOIA documents, because they are related to the same subject matter as the petition and were in EPA's possession during its consideration of the petition. Particularly, the Court should include in the record those documents that reference the exact same request to regulate neonicotinoid-coated seeds, and those regarding disposal of those seeds as necessary for the Court to determine if EPA failed to consider an important aspect of the case under this APA review of EPA petition denial.

I.  "Whole Record Standard" Includes Documents Submitted to Agency

In essence, the parties agree on the "whole record" standard: "'The whole record' includes everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (citing *Thompson v. U. S. Dep't of Labor*, 885 F.2d 551, 555–56 (9th Cir.1989)); *see also Goffney v. Becerra*, 995 F.3d 737, 747 (9th Cir. 2021). "The whole administrative record, …, is not necessarily those documents that the *agency* has compiled and submitted as the administrative record. … The whole administrative record, therefore, consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555 (citing *Exxon Corp. v. Department of Energy*, 91 F.R.D. 26, 32

(N.D.Tex.1981)) (internal citations omitted) (emphasis in original).

Parties also agree that the Ninth Circuit has not fully defined the scope of "*indirectly* considered." EPA Opp. at 4. On one hand, documents considered and/or relied upon by subordinates to the decision maker are clearly within the category. *Id.*; *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2017 WL 4642324, at *2 (N.D. Cal. Oct. 17, 2017); *In re United States*, 875 F.3d 1200, 1207 (9th Cir. 2017). On the other hand, an agency may not exclude information it considered on the grounds that it did not rely on it or did not deem it "relevant" to the issues in litigation. *Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, Nos. 05-cv-3508-EDL & 05-cv-4038-EDL, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006); *WildEarth Guardians v. Bernhardt*, 507 F.Supp.3d 1219, 1223 (C.D. Cal. 2020); *Gill v. Dep't of Justice*, 2015 WL 9258075, at *6 (N.D. Cal. 2015).

When the Ninth Circuit held that it has "not yet clarified the exact scope of 'indirectly considered,'" it was specifically in reference to the government's appeal of the district court's decision to include materials considered by subordinates who then briefed the Acting Secretary (decision maker). *In re United States*, 875 F.3d at 1207. Thus, after the Ninth Circuit stated that the scope was not defined, it went on to cite several district court decisions holding the record is not limited to just documents that were considered by top decision makers. This is not the issue here, nor is this the full scope of "indirectly considered," which is not limited to just documents *relied* upon by subordinates.

Materials provided to the agency during the decision making must logically also belong in this category of "indirectly considered." EPA does not disagree that attachments to comments submitted during its comment period on the Coated Seeds Petition are part of the record. Attachments to the original petition must be treated the same.

Further, EPA argues the 36 attachments to the original petition "have no relevance" to EPA's petition denial. EPA Opp. at 7. But relevancy is not part of the "whole record" standard. Rather, relevance is an evidentiary standard used in normal civil discovery under Federal Rule of Civil Procedure 26, not under the APA "whole record." Further, even under that standard, the attachments supporting the claims in the petition and this

litigation—namely that neonicotinoid-coated seeds cause harm to the environment and are therefore not eligible to be exempted from regulation—are clearly "relevant." EPA's argument that its denial ignored the harms from coated seeds because they can be dealt with during individual registrations goes to the *merits* of the case, not the scope of the record, and misses the point. Plaintiffs assert in the Petition and in this case that EPA cannot reasonably exempt coated seeds from regulation under FIFRA under the Treated Article Exemption (TAE), because of the harms they uniquely cause. Plaintiffs also assert, and EPA denied, that EPA's current assessment of only the liquid coating products (through product approvals, registration review, etc) does not sufficiently consider the harms of coated seeds.

## II.   Plaintiffs Overcame Presumption of Regularity, Burden Shifts to EPA

Plaintiffs here did overcome the presumption of regularity by identifying "reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record" and providing for EPA and the Court "the materials allegedly omitted from the record with sufficient specificity." *Gill v. Dep't of Justice*, 2015 WL 9258075, at *5 (N.D. Cal. 2015) (citing *Winnemem Wintu Tribe v. U.S. Forest Service*, No. 2:09-CV-01072-KJM-KJN, 2014 WL 3689699, at *10 (E.D. Cal. July 24, 2014)).

Plaintiffs' non-speculative grounds for believing that EPA considered—at least indirectly—the attachments to its Petition are simple: Petitioners hand delivered the attachments to the Office of the Administrator and followed up with an email to EPA staff from other offices, including the Office of Pesticide Programs (OPP), noting that those attachments were delivered. Plaintiffs provided to EPA and now the Court copies of these attachments. van Saun Decl. Exs. 1, 2. This is not a case where Plaintiffs are guessing that there is some category of documents that EPA must have considered; rather, these were attachments to the petition itself, cited and relied on therein, and provided in hard copy to EPA at the time of petition delivery.

1	Plaintiffs only have the burden to rebut the presumption of regularity, by showing
2	any irregularity in the record, and then the burden shifts to the agency to show the record
3	is complete. *Portland Audubon Soc'y*, 984 F.2d at 1548. Here, Plaintiffs have carried that
4	burden. EPA does not deny the authenticity of the handwritten acknowledgement of
5	receipt of the petition by Cynthia Gaines in the EPA Administrator's office. van Saun Decl.
6	Ex. 1. Nor does EPA deny that OPP staff received an email the next day, linking to the
7	electronic copy of the petition but also specifically noting that "about 36 supporting
8	documents cited in footnotes" were hand delivered. van Saun Decl. Ex. 3. EPA complains
9	that it has over 15,000 employees but does not mention the files of the single employee
10	that signed the acknowledgement of receipt: Cynthia Gaines.
11	And regardless of EPA's own *internal* guidance on how to handle citizen petitions,
12	Kiely Decl. Ex. 2, EPA provides no evidence that delivery of this petition in 2017 was
13	contrary to any *publicly* available guidelines from EPA on how to deliver citizen petitions.
14	Further, in 2018, EPA opened a discretionary public comment period for the petition. EPA
15	blames Plaintiffs for not recognizing EPA's failure to include these attachments in that
16	comment docket as notice to Plaintiffs that their attachments were not internally shared.
17	EPA Opp. at 10. But that is quite a high burden to place on a citizen petition to a federal
18	government agency. Plaintiffs *did* upload many additional supporting documents during
19	that comment period, including some repeats from the Petition, because they were cited
20	in the comments. Just like the original petition itself noted that copies of sources cited,
21	other than those authored by EPA, would be provided to EPA. ECF 54-2 at FN 1. Based on
22	the uncontroverted evidence before this Court, EPA was on notice and took delivery of the
23	attachments to the Petition.
24	EPA claims now, six years later, that it cannot locate those original files. EPA Opp.
25	at 10. But that is not the fault of the Petitioners, who delivered a petition with supporting
26	documents, waited years for a response, and ultimately had to sue EPA to compel a
27	response. *Ctr. for Food Safety v. U.S. Env't Prot. Agency*, No. 21-cv-09640-JSC (March 15,
28	2023) (terminating case upon completion of consent decree requirement of EPA response

to petition). Further, EPA does not claim that these sources supporting the petition would change anything about its denial of that petition; to the contrary, it claims they are "irrelevant" to the legal questions at issue. But the record is not limited to what is relevant to the litigation claims, or to what the agency relied upon in making its decision. The burden is on EPA to show that these documents were not before it; failure to maintain its own files should not be enough to overcome this burden.

### III. Record Should Be Supplemented with FOIA Documents That Show Failure to Consider Important Aspect

EPA also claims that the FOIA documents, undeniably in its possession, are not part of the record because it did not consider them in denying the petition. EPA Opp. at 10. However, the documents are clearly related to the petition, and while the FOIA request is more specific than just "documents related to the 2017 Petition," that is what is required to obtain comprehensive FOIA responses. Again, EPA cannot unilaterally limit the record to documents it *relied* on in denying the petition. *Supra*.

The FOIA documents are a limited universe, specified for the EPA and Court, and not some unknown broad category of documents. They contain factual information related to the impacts from coated seeds, the subject of the 2017 Petition. For example, Exhibit 49 is an email from the Natural Resources Defense Center to EPA (including Ed Messina and Marietta Echeverria) dated March 10, 2021, that follows up on the conversation and specifically asks that EPA "register and regulate seeds treated with neonics and other systemic pesticides." Van Saun Decl. Ex. 49 at 2. That email attaches NRDC's own petition to the State of California to regulate neonicotinoid-coated seeds, along with an attachment report titled "Neonicotinoids in California." Ex. 50. These documents were sent to EPA, prior to EPA's September 2022 denial of this petition, and covered the same subject matter and demand. It is beyond the pale that EPA now claims it did not at all consider these documents in denying the same demands in the petition at issue here. EPA cannot unilaterally keep such documents out of the record just because it did not rely on them, or because they are adverse to EPA's final action.

Further, the documents relating to disposal of neonicotinoid-coated seeds should be included in the record under the first exception for supplementing the record: to determine whether EPA considered the relevant factors and sufficiently explained its decision. van Saun Decl. Exs. 43, 44 (email to and from Richard Keigwin attaching article from Lincoln Journal Star titled "Public records reveal frustration as state sought to deal with pesticide dangers from ethanol plant"). The petition argues that coated seeds are too harmful to be subject to the TAE and therefore not subject to compliance with FIFRA's mandatory safety standards and enforceable labeling. In its response, EPA discusses labeling of the seed bags and tags, noting that instructions include disposal, but also acknowledging that any misuse of these unregistered pesticides is not currently enforceable. EPA Denial at 41; *see also* 45, FN 103 (noting that some states have regulations above and beyond EPA's for disposal of coated seeds). EPA does not, however, grapple with the implications of unregulated disposal of coated seeds in terms of the unique harms from coated seeds and whether that makes them eligible for exemption under the TAE. EPA's failure to consider this aspect of the problem necessitates supplementation of the record with documents *in EPA's possession* after the petition was filed and before EPA denied it, related to disposal of coated seeds.

## CONCLUSION

In this petition denial challenge, the Court should order completion of the record with attachments of supporting material provided with the petition itself, as well as documents produced by the agency under FOIA relating to the same subject matter as the petition during the pendency of the agency's consideration of the petition.

DATE:  December 18, 2023

Respectfully submitted,
/s/ Amy van Saun

Amy van Saun (*Pro Hac Vice*)
Kristina Sinclair (CA Bar No. 329416)
CENTER FOR FOOD SAFETY

*Attorneys for Plaintiffs*