UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR FOOD SAFETY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendants. | Case No. 23-cv-02714-SI<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO COMPLETE THE ADMINISTRATIVE RECORD**<br><br>Re: Dkt. No. 51 |

Before the Court is plaintiffs' motion to complete or in the alternative to supplement the administrative record. Dkt. No. 51. Defendants oppose. Dkt. No. 54. Pursuant to Civil Local Rule 7-1(b), the Court determines that the motion is suitable for resolution without oral argument, and VACATES the December 21, 2023 hearing. For the reasons set forth below, the Court GRANTS plaintiffs' motion to complete the administrative record.

**BACKGROUND**

This case challenges the denial by the U.S. Environmental Protection Agency ("EPA") of plaintiffs' April 26, 2017 Citizen Petition ("Petition"), "which urged EPA to close the 'regulatory loophole' allowing seeds coated with systemic pesticides [] to evade the registration and labeling requirements of the Federal Insecticide, Fungicide, and Rodenticide Act." Dkt. No. 1 ("Compl.") ¶ 1. The 2017 Petition requested the EPA "clearly communicate to the regulated community that systemic pesticidal seeds intended to kill insect pests of the plants are not included" under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA")'s Treated Article Exemption. Dkt. No. 54-1, Ex. 1 ("Petition") at 1. The Petition specifically requested the EPA either amend 40 C.F.R. § 152.25(a) "to clarify that it does not apply to seeds for planting coated with systemic pesticides, such as the neonicotinoids, that are intended to kill pests of the plant instead of pests of the seed itself…" or by publishing a "final, formal, agency interpretation in the Federal Register stating that

EPA interprets the exemption in 40 C.F.R. § 152.25(a) not to apply to seeds for planting coated with systemic pesticides, such as the neonicotinoids…" *Id.* at 4. The Petition further requested the EPA "[a]ggressively enforce FIFRA's numerous pesticide registration and labeling requirements for each separate crop seed product that is coated with a neonicotinoid or other systemic insecticidal chemical." *Id.* On September 27, 2022, the EPA denied the requests in the Petition after plaintiffs filed an undue delay lawsuit. *See* Dkt. No. 54-4 at 3; Dkt. No. 51 at 4.

Plaintiffs assert in a signed declaration that on April 27, 2017, they hand-delivered the Petition and 36 supporting documents cited in the Petition to the EPA. Dkt. No. 52 ("van Saun Decl.") ¶ 3.[1] A copy of the cover page of the Petition contains a hand-written acknowledgement that it was hand-delivered to Cynthia Gaines at EPA on April 27, 2017. van Saun Decl. Ex. 1. On April 28, 2017, a former Center for Food Safety ("CFS") staff attorney emailed several EPA employees, confirming delivery. van Saun Decl. Ex. 3; van Saun Decl. ¶ 10. This email was forwarded by one of the recipients to additional EPA personnel. van Saun Decl. Ex. 3. The email also included a link to the Petition. *Id.*[2]

On July 28, 2021, while the Petition was pending, plaintiff CFS filed a Freedom of Information Act ("FOIA") request for "all records relating to crop seeds treated or coated with any of the following chemicals: acetamiprid, clothianidin, imidacloprid, or thiamethoxam (hereinafter, 'neonicotinoids'), including but not limited to the subtopics specifically described…" Kiehl Decl. Ex. 4. Specifically, CFS requested any and all documents and communications since January 1, 2017: (1) "relating to EPA's implementation or interpretation" of the FIFRA Treated Article Exemption "with regard to its application to crop seeds treated or coated with neonicotinoids"; (2) "related to any determination that neonicotinoid-coated crop seeds are or are not subject to regulation as pesticides under [FIFRA]"; (3) "related to any agency determination that

---

[1] Some of these documents were also submitted to the public docket through the comment process. No. 51 at 3 n.1. These documents are already in the record and there is no dispute as to these documents. *Id.*

[2] EPA asserts that the "current link" to the Petition does not include the supporting documents. Dkt. No. 54 at 9.

1  neonicotinoid-coated seeds as a class or as a whole do or do not cause unreasonable adverse effects
2  on the environment"; (4) "with any pesticide registrant, applicant for registration or potential
3  applicant for registration, or with any other persons or entities regarding the application or scope of
4  the Treated Article Exemption with respect to neonicotinoid-coated crop seeds"; (5) with "any
5  federal, state or tribal pesticides regulators regarding inspections or investigation of incidents
6  involving treated seeds, particularly neonicotinoid treated seeds, and reported bee kill incidents."
7  *Id.* Plaintiffs indicate they sued EPA under FOIA to obtain these documents. Dkt. No. 51 at 4.

EPA filed a certified index to the administrative record on November 9, 2023. Dkt. No. 48. The Director for the Pesticide Re-Evaluation Division within the Office of Pesticide Programs at the EPA certified that the administrative record is complete. Dkt. No. 48. On October 27, 2023 plaintiffs notified EPA of "issues with the record," including the missing supporting documents attached to the hand-delivered Petition ("Petition documents") and documents received through the FOIA request ("FOIA documents"). van Saun Decl. ¶ 4. EPA responded that it had "no evidence that it received these documents in connection with the 2017 petition" with respect to the Petition documents, and that for the Petition documents and the FOIA documents, the EPA did not directly or indirectly consider these documents in responding to the 2017 Petition. *Id.* ¶ 5. Plaintiffs then filed the present motion.

**LEGAL STANDARD**

In conducting judicial review pursuant to Section 706 of the Administrative Procedure Act, courts "shall review the whole record or those parts of it cited by a party…" 5 U.S.C. § 706. Judicial review is based on the full administrative record before the agency when it made its decision. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "The 'whole record' includes everything that was before the agency pertaining to the merits of its decisions." *Portland Audubon Soc. v. Endangered Species Committee*, 984 F.2d 1534, 1548 (9th Cir. 1993) (citing *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989)). In *Thompson*, the Ninth Circuit held that the "whole administrative record" consists of "all documents and materials directly or *indirectly* considered by

3

agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis in original) (quoting *Exxon Corp. v. Department of Energy*, 91 F.R.D. 26, 32 (N.D.Tex.1981)).[3] It "is not necessarily those documents that the agency has compiled and submitted as the administrative record." *Thompson*, 885 F.2d at 555 (citations and internal quotation marks omitted).

"[L]ike other official agency actions, an agency's statement of what is in the record is subject to a presumption of regularity." *Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021). Courts therefore must "presume that an agency properly designated the Administrative Record absent clear evidence to the contrary." *Id.* (citations and internal quotation marks omitted). Plaintiffs need not show bad faith or improper motive to rebut this presumption. *Doe I v. U.S. Dep't of Homeland Sec.*, No. 20-CV-07517-BLF, 2021 WL 5121169, at *2 (N.D. Cal. Nov. 2, 2021) (citations omitted). To meet the clear evidence standard, plaintiffs must "identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." *Doe I v. U.S. Dep't of Homeland Sec.*, 2021 WL 5121169, at *2.

A motion to supplement an administrative record is subject to a different analysis. "Generally, judicial review of an agency decision is limited to the administrative record on which the agency based the challenged decision." *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010). The Ninth Circuit permits "expansion of the administrative record in four narrowly construed circumstances: (1) supplementation is necessary to determine whether the agency has considered all factors and explained its decision; (2) the agency relied on documents not in the record; (3) supplementation is needed to explain technical terms or complex subjects; or (4) plaintiffs have shown bad faith on the part of the agency." *Id.* (citation omitted).

---

[3] The Ninth Circuit has "not yet clarified the exact scope of 'indirectly considered,'" but "[d]istrict courts in this and other circuits… have interpreted that phrase to include materials relied on by subordinates who directly advised the ultimate decision-maker." *In re United States*, 875 F.3d 1200, 1207 (9th Cir. 2017), *judgment vacated on other grounds*, 583 U.S. 29 (2017).

**DISCUSSION**

Plaintiffs argue EPA did not include the Petition documents and FOIA documents in the administrative record it produced on September 29, 2023 and that these documents are part of the "whole record." Dkt. No. 51 at 1-2. EPA responds that plaintiffs fail to meet their burden of rebutting the "presumption of regularity" and EPA did not directly or indirectly consider the documents plaintiffs identify. Dkt. No. 54 at 6.

**I.    Documents Allegedly Hand-Delivered to EPA**

EPA asserts it did not directly or indirectly consider these documents and that plaintiffs mischaracterize the standard for rebutting the presumption of regularity. Dkt. No. 54 at 6. EPA includes a signed declaration from Timothy Kiely, Acting Director of the Pesticide Re-Evaluation Division ("PRD") in the Office of Pesticide Programs ("OPP"). Dkt. No. 54-1 ("Kiely Decl."). Kiely indicates that to the best of his knowledge, EPA received notice of the Petition on April 29, 2017 through the email from plaintiffs sent to the then OPP Director and a number of other EPA staff. *Id.* ¶ 5.[4] Kiely later indicates that "[t]o our knowledge, the petition was obtained electronically either through the plaintiff's website or from another employee." *Id.* ¶ 7. Kiely coordinated with PRD staff, who in turn coordinated with other EPA employees "who might have received these documents," including each of the EPA employees addressed in the April 29, 2017 CFS email and EPA employees who were assigned to coordinate the preparation of a response to the Petition. *Id.* This included employees in numerous EPA officers. *Id.* "Through this coordinated effort, PRD staff were not able to locate a copy of the petition or attachments identified as having been hand-delivered." *Id.* EPA argues the Petition documents thus do not form part of the administrative record because the decisionmakers did not review or even have these documents in their possession, so did not consider them. *See* Dkt. No. 54 at 10, 12.

As EPA points out, the facts of this case are unique. EPA asserts through a signed

---

[4] Kiely was Chief of the Economic Analysis Branch Biological and Economic Analysis Division at the time the email was sent and was not a recipient of the email. *See* Kiely Decl. ¶ 2; van Saun Decl. Ex. 3.

declaration that it has no record of having received the Petition documents. Plaintiffs assert through a signed declaration with supporting exhibits that they hand-delivered the documents to EPA. The cases both parties cite in support of their respective arguments do not address this factual scenario. The Court cannot resolve the factual issue of what happened to the documents after they were allegedly hand-delivered to the EPA. However, the Court finds that plaintiffs have rebutted the "presumption of regularity" by identifying "reasonable, non-speculative grounds for the belief that the documents were considered by the agency," namely that the Petition documents were hand-delivered to the EPA. *See Doe I v. U.S. Dep't of Homeland Sec.*, 2021 WL 5121169, at *2. Additionally, materials provided to an agency during a decision-making process related to the subject matter of that decision logically fit within the category of "indirectly considered," and the Court has not found case law to the contrary.

## II.     Documents Plaintiffs Obtained Through FOIA Request

EPA asserts that there is no dispute that the FOIA documents came from EPA's files, but that this does not mean they are part of the administrative record. Dkt. No. 54 at 13. EPA asserts that the FOIA request is "much broader" than the Petition because the FOIA request sought all records related to crop seeds treated or coated with any of a list of chemicals, while the Petition asked specifically for a changed interpretation of the FIFRA Treated Article Exemption. *Id.* EPA further asserts that several of the FOIA documents identified by plaintiffs "refer to treated seed issues outside the scope of the Petition, such as disposal or petitions to state governments." *Id.* EPA cites to one case from the District of Columbia which held that "[a]n agency's possession of certain records, as confirmed by their disclosure in response to a FOIA request, is not sufficient to show that the same records were considered by the agency" and "mere possession triggers no requirement to include such records in the administrative record*." Stand Up for California! v. U.S. Dep't of Interior*, 71 F. Supp. 3d 109, 117 (D.D.C. 2014).

Plaintiffs argue that the FOIA documents are related to the Petition subject matter, "namely the application of the Treated Article Exemption to neonicotinoid coated seeds and those seeds impact, including whether they meet the FIFRA safety standard of not causing 'unreasonable

1  adverse effects on the environment.'" Dkt. No. 51 at 4. Plaintiffs assert that within these FOIA
2  documents are emails to EPA staff "involved in the treated seed petition," and that the FOIA
3  documents were produced from the same office handling the Petition (OPP). *Id.* at 8. Plaintiffs add
4  that it took EPA years to respond to the Petition, and while the Petition was pending, CFS used
5  FOIA "to determine what the agency had before it and was considering before responding to the
6  Petition." *Id.* at 10.

7  The Court finds that plaintiffs have rebutted the presumption of completeness with a showing
8  that the FOIA documents were at least indirectly considered in the Petition decision-making process.
9  The FOIA documents all concern the subject matter of the Petition, some of the documents reference
10 the "treated seed petition," and the documents are all from the time period during which the Petition
11 was pending before the EPA.

12 Because the Court grants plaintiffs' motion to complete the administrative record with
13 respect to both categories of documents, the Court need not reach the issue of whether, in the
14 alternative, the administrative record should be supplemented with these documents.

## CONCLUSION

For the above-mentioned reasons and for good cause shown, the Court GRANTS plaintiffs' motion to complete the administrative record with respect to the specified Petition documents and FOIA documents. These documents, located at Dkt. Nos. 52 and 53, Exs. 1-60, will be considered part of the administrative record.

**IT IS SO ORDERED**.

Dated: December 19, 2023

SUSAN ILLSTON
United States District Judge